beyond the place of the boat's destination, cannot be inferred from the facts proved in this case. Clear and satisfactory evidence of such a contract is required by the law, (*Myrick* v. *Michigan Cent. R. Co.* 107 U. S. 102; S. C. 1 Sup. Ct. Rep. 425;) and certainly without such an agreement no lien upon the steam-boat was created by the act of the railroad in delivering the cotton to the Canoe Cotton Mills at Kinderhook without the shipper's order, when a receipt containing the words, "To order; notify Canoe Cotton Mills, Valatie, N. Y," as well as the words, "Account of Tolar, Hart & Co.," had been given at the time of the shipment of the goods.

The libel is accordingly dismissed, without considering the other points made in behalf of the claimant, upon the ground that when the steam-boat delivered the cotton to the railroad at Hudson the duty attaching to the steam-boat as carrier was discharged.

---

## The Snap.

*(District Court, D. New Jersey. August 13, 1884.)*

ADMIRALTY PRACTICE—STIPULATION FOR COSTS—OATH OF SURETY.

　Until satisfactory proof is put in that the officer, in accepting a bond, was deceived or did not properly perform his duty, the court will assume that the security is sufficient, and when the surety has made oath that he is worth a sufficient sum over and above all his just debts and liabilities the stipulation is *prima facie* good.

In Admiralty.

*Hyland & Zabriskie*, for libelants.

*Wallis & Edwards*, for claimants.

NIXON, J. The proctors for the libelants in the above-stated cause filed with the libel the usual stipulation for costs, offering as surety one Isaac Pierson, who swore that he was worth the sum of $500 over and above all his just debts and liabilities. This is all that the rule requires, and is, *prima facie*, a good stipulation. The proctors for the claimants, however, gave notice to the libelants to produce their surety (Pierson) before Mr. Commissioner Romaine in Jersey City, on a day stated, to enable them to make further inquiry as to his property and responsibility. The libelants declined to produce him; and a rule was then taken upon them to show cause before the court why additional security for costs should not be furnished. On the return of the rule no evidence was offered to show, or tending to show, that the stipulation filed was not good, but the court was asked to inaugurate the practice of setting aside a stipulation for costs entered into in the usual form, and verified by the usual affidavit, upon the mere suggestion by the respondents that it might not be sufficient.

Until some satisfactory proof is put in that the officer, in accepting

the bond, was deceived, or did not properly perform his duty, the court must assume that the bond is sufficient.

The rule to show cause is discharged.

---

### THE Co. F. YOUNG and THE SARAH C. HAGAR. [1]

*(District Court, E. D. New York.* February 25, 1885.)

COLLISION—CONFLICTING EVIDENCE—PROBABILITY.

    Where the evidence in a collision case was conflicting, and one version of the accident made it necessary to suppose that the collision must have been intentional, while the other version did not, the latter was believed to be the truth.

In Admiralty.

*Hyland & Zabriskie*, for libelant.
*Alexander & Ash*, for the Hagar.
*Benedict, Taft & Benedict*, for the Young.

BENEDICT, J. Upon the evidence in this case the libelant can recover against one of the tugs proceeded against, but not against the other. He can recover against the Co. F. Young if he and the witnesses produced by the Sarah C. Hagar tell the truth. He can recover against the Sarah C. Hagar if the witnesses produced by the Co. F. Young tell the truth. I incline to believe the account given by those in charge of the Co. F. Young, for the following reasons: This account is not improbable, while it is highly improbable that the Co. F. Young, with the Sarah C. Hagar and her tow in plain sight, would start up and run into the canal-boat, as the witnesses from the Hagar say she did. Such an act was so uncalled for that the witnesses for the other side say that the collision must have been intentional on the part of the Co. F. Young. Moreover, the testimony given by the libelant and the witnesses for the Hagar is far from harmonious, whereas the testimony given by those from the Co. F. Young is not open to such a criticism. In addition to this, the witnesses who testify to the account contended for by the Sarah C. Hagar are outnumbered by the witnesses for the Co. F. Young. In such a state of the evidence, the libel, as against the Co. F. Young, must be dismissed, and the libelant may have a decree against the Sarah C. Hagar, with a reference to ascertain his damages.

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.